IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BARBARA J. HARPER, et al.,

                Plaintiffs,

v.                                        CIVIL ACTION NO.  2:09-cv-00973

UNITED STATES OF AMERICA,

                Defendant.

MEMORANDUM OPINION AND ORDER

Two motions are pending before the court in this case.  The first motion is the United States'
Motion to Dismiss [Docket 7].  The second motion is the plaintiffs' Motion for Leave to File
Surreply [Docket 13].  Both motions are **DENIED**.

I.  Background

    A.  *Facts*

This is a case involving allegations of medical malpractice against a physician working at
a federally funded clinic.  On December 20, 2005, plaintiff Barbara Harper underwent a total
abdominal hysterectomy, left salpingo-oophorectomy, and right salpingectomy at Jackson General
Hospital, in Ripley, West Virginia (the "surgery").  Defendant Dr. John McMurry performed the
surgery.[1]

After the surgery, Ms. Harper "developed CVA tenderness on her right side."  (Compl. ¶ 7.)
She consulted another physician and underwent a retrograde cystogram and pyelogram.  During this

---

[1]  The Complaint named "John P. McMurray" as a defendant.  The United States has stated
that the correct spelling is "McMurry."

procedure, it was discovered that Ms. Harper's right ureter had been lacerated or sutured during the surgery. As a result of this laceration or suturing, Ms. Harper "developed atelectasis and bilateral pleural effusions, as well as surgical ileus." (*Id.* ¶ 9.) Because of these and other problems, Ms. Harper had to undergo additional procedures, including the reimplementation of her right ureter to her abdominal bladder. She continues to complain of health problems.

On May 14, 2007, Ms. Harper's lawyer sent a certified letter to Dr. McMurry and Jackson General Hospital. The letter stated, "Pursuant to West Virginia Code section 55-7B-6, the purpose of this letter is to put you on formal notice of a claim regarding Mrs. Harper." (Pls.' Resp. Mot. Dismiss, Ex. 1 at 1.) The letter went on to say that "this statement is being sent pursuant to the above-referenced section of the West Virginia Code in lieu of a screening certificate," followed by a detailed two-paragraph description of the surgery, as well as Ms. Harper's remedial procedures. (*Id.* at 1-2.)

On April 28, 2008, Ms. Harper, along with her husband, William Harper, filed a "SF-95" with the General Counsel of the U.S. Department of Health and Human Services ("DHHS"). The SF-95 briefly described the surgery and Ms. Harper's claimed injuries from it and asserted a claim for $3 million. (*Id.*, Ex 2.) DHHS denied the Harpers' claim by letter on December 5, 2008.

*B.  Procedural History*

On April 27, 2009, the Harpers filed the Complaint in the Circuit Court for Jackson County, West Virginia, asserting a claim for "Medical Malpractice/Negligence" against Dr. McMurry and Family Health Care, Incorporated.[2] On August 28, 2009, the parties filed an joint motion to dismiss

---

[2] According to the Complaint, Dr. McMurry was "a physician working for or on behalf" of Family Health Care. (Compl. ¶ 2.)

Dr. McMurry and Family Health Care as defendants, and to substitute the United States in their place under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  That same day, the defendants removed the case to federal court. The court granted the motion to substitute the United States as the lone defendant.

On September 16, 2009, the defendant filed the Motion to Dismiss.  By its Motion, the defendant contends that the plaintiffs failed to serve a certificate of merit by a qualified medical expert or a statement in lieu thereof, as required by West Virginia law.  Therefore, the defendant argues, the Complaint fails to state a claim upon which relief may be granted.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss under Rule 12(b)(6), a court must accept the facts of the complaint as true and view them in the light most favorable to the nonmoving party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.  Discussion

The FTCA is a limited congressional waiver of sovereign immunity for claims of injury or loss caued by the negligent act of a federal government employee acting within the scope of his employment.  In a claim against the United States under the FTCA, the law of the place "where the act or omission occured" must be applied.  28 U.S.C. § 1346(b)(1); *Cibula v. United States*, 551 F.3d

316, 319 (4th Cir. 2009). The "act or omission" complained of in this case occurred in West Virginia; West Virginia law therefore applies.

The sole issue presented by the defendant's Motion is whether the plaintiffs have complied with the requirements of West Virginia Code section 55-7B-6. Some judges have ruled that this requirement is substantive, rather than procedural. *See Griffin v. Rubenstein*, 2009 WL 1587274 at *2 (S.D. W. Va. June 8, 2009) ("[C]ompliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court."); *Stanley v. United States*, 321 F.Supp.2d 805, 806-07 (N.D. W. Va. 2004) (ruling that section 55-7B-6 is substantive, rather than procedural). I have not, however, had occasion to determine this issue. Nevertheless, because I conclude that the plaintiffs have complied with that statute, I need not answer that question in this case.

Subsection (b) of section 55-7B-6 requires a plaintiff in a medical-malpractice action to serve all health-care-provider defendants with a "notice of claim" at least thirty days prior to filing a medical-malpractice lawsuit. W. Va. Code § 55-7B-6(b). The notice of claim must include "a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit." *Id.* The certificate of merit must be executed under oath by a qualified medical expert and must state: "(1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death." *Id.*

Subsection (c) of Section 55-7B-6, however, provides that if a claimant "believes that no screening certificate of merit is necessary because the cause of action is based upon a

-4-

well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care," then the claimant "shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit." *Id.* 55-7B-6(c).

The defendant contends that the plaintiffs have failed to comply with the requirements of section 55-7B-6.  The defendant argues that the complexity of the plaintiffs' claims require a certificate of merit.  It asserts that "[e]ither individually or collectively these gynecological and urological conditions and procedures are complex and not within the expertise of laymen." (Mem. Supp. Mot. Dismiss 8.)  Furthermore, the defendant maintains, even if "a screening certificate of merit is not required, then plaintiffs' statement in lieu thereof is legally insufficient because it fails to establish either a 'well established legal theory of liability' or set forth the basis of alleged liability." *(Id.* at 9.)  The defendant asserts that "Plaintiffs' May 14, 2007, letter does nothing more than tell the recipient to read the medical record and figure it out for yourself." *(Id.)*  Therefore, the defendant contends, the Complaint should be dismissed.

The plaintiffs reject this argument and contend that they have complied with the requirements of section 55-7B-6.  They first contend that a screening certificate was not required because "this case is not so complex that a screening certificate of merit was required." (Pls.' Resp. Mot. Dismiss  7.)  They assert that "[i]t is easy to understand that completely lacerating a ureter during a hysterectomy and then closing the patient without reattaching the ureter will result in a natural leakage of dirty urine and blood into the abdomen thus harming the patient." *(Id.* at 8.)  And, they maintain, the May 14, 2007 letter and the SF-95 complied with the requirements of section 55-7B-6(c).

### A.  A screening certificate of merit is not required

Section 55-7B-6(c) excuses a plaintiff from complying with subsection (b) if the claimant or her counsel believes that expert testimony will be unnecessary.  Viewing the facts in the light most favorable to the plaintiffs, *see Johnson v. United States*, 394 F.Supp.2d 854, 858 (S.D. W. Va. 2005), expert testimony may not be required.  The plaintiffs allege that Dr. McMurry negligently severed Ms. Harper's ureter, causing blood and urine to leak internally.  Although fairly complex medical terms are used, it is possible that a jury may not require an expert to explain that the alleged conduct  breached the applicable standard of care.  As such, a screening certificate is not required under section 55-7B-6.

### B.  The plaintiffs complied with section 55-7B-6(c)

The Supreme Court of Appeals of West Virginia has recognized that "the Legislature's clear intent in enacting W.Va. Code § 55-7B-6 was to mandate that a plaintiff in a medical malpractice claim file his or her certificate of merit at least 30 days prior to filing his or her medical malpractice action so as to allow health care providers the opportunity to demand pre-litigation mediation." *Miller v. Stone*, 607 S.E.2d 485, 490 (W. Va. 2004). Subsection (c) of that statute requires the claimant to provide each putative defendant with a statement of a "well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

In their May 14, 2007 letter to Dr. McMurry and Jackson General Hospital, the plaintiffs stated the following, in pertinent part:

> As you are aware, my client, Barbara Harper, underwent a total abdominal hysterectomy, left salpingo-oophorectomy and right salpingectomy by your hand on December 20, 2005.  After approximately 48 hours in surgery, Mrs. Harper's abdomen became distended and tight, and she developed CVA tenderness on the

right. Dr. Vaidya was consulted and Mrs. Harper underwent a retrograde cystogram and pyelogram. The right ureter was found to be lacerated. As such, plaintiff developed atelectasis and bilateral pleural effusions as well as a surgical ileus. Mrs. Harper was also started on hyperalimentation and given pain medication because of extreme discomfort. Because of the lacerated ureter and subsequent problems this caused Mrs. Harper, she later underwent an exploratory laparotomy with reimplementation of the right ureter into the abdominal bladder.

Since that time, plaintiff has undergone severe malnutrition, hypokalemia, had several units of blood and has been in constant pain. She continues to see various doctors for her worsening condition.

(Pls. Resp. Mot. Dismiss, Ex. 2 at 2.) Contrary to the defendant's assertions, the letter does not only tell the recipients to "figure it out for yourself." It provides a detailed description of Ms. Harper's alleged injury, supporting a well-established legal theory of liability: negligence. This satisfies the requirements of section 55-7B-6(c).

## IV.  Conclusion

The plaintiffs have complied with the requirements of West Virginia Code section 55-7B-6. The Motion to Dismiss [Docket 7] is thus **DENIED**. The plaintiffs' Motion for Leave to File Surreply [Docket 13] is **DENIED** as moot. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      December 8, 2009

Joseph R. Goodwin, Chief Judge